1  RUSSELL J. FRACKMAN
   YAKUB HAZZARD
2  MITCHELL SILBERBERG & KNUPP LLP
   11377 West Olympic Boulevard
3  Los Angeles, CA 90064-1683
   Telephone: (310) 312-2000
4  Facsimile: (310) 312-3100

5  KAREN L. STETSON
   2350 Prairie Avenue
6  Miami, FL 33140
   Telephone: (305) 532-4845
7  Facsimile: (305) 604-0598

8  Attorneys for Plaintiffs

9

10                    UNITED STATES DISTRICT COURT

11                    SOUTHERN DISTRICT OF FLORIDA

12

13  SONY MUSIC ENTERTAINMENT INC., a          CASE NO. 98-6507-Civ-Middlebrooks
    corporation; A & M RECORDS, INC., a
14  corporation; BMG MUSIC, d/b/a THE RCA
    RECORD LABEL, a general partnership;      PLAINTIFFS' EX PARTE
15  CAPITOL RECORDS, INC., a corporation;     APPLICATION FOR ORDER
    ELEKTRA ENTERTAINMENT, a division of      FREEZING ASSETS OF DEFENDANTS
16  WARNER COMMUNICATIONS, INC., a            GLOBAL ARTS PRODUCTIONS AND
    corporation; MCA RECORDS, INC., a         DANNY JORDAN;
17  corporation; POLYGRAM RECORDS, INC.,
    a corporation; and WARNER BROS.           MEMORANDUM OF LAW; AND
18  RECORDS INC., a corporation,
                                              DECLARATION OF MATTHEW J.
19                    Plaintiffs,             OPPENHEIM IN SUPPORT THEREOF

20       v.

21  GLOBAL ARTS PRODUCTIONS, an entity
    of unknown form; DANNY JORDAN, an
22  individual; SATURN RECORDS, an entity of
    unknown form; STACK-O-HITS, an entity of
23  unknown form; and JACK MILLMAN, an
    individual,
24
                      Defendants.
25

26

27         Plaintiffs, Sony Music Entertainment Inc., A & M Records, Inc., BMG Music,

28  d/b/a The RCA Record Label, Capitol Records, Inc., Elektra Entertainment, Warner

Mitchell Silberberg &

1  Communications, Inc., MCA Records, Inc., Polygram Records, Inc. and Warner Bros. Records

2  Inc., by and through undersigned counsel and pursuant to Rules 64 and 65, respectfully request

3  this Court's entry of an order freezing the assets of defendants Danny Jordan and Global Arts

4  Productions.

5

6                                   **MEMORANDUM OF LAW**

7

8  **I.      INTRODUCTION**

9

10         Since the inception of this action, defendants Global Arts Productions ("Global Arts")

11  and Danny Jordan ("Jordan") have willfully and repeatedly refused to comply with any of the

12  Orders issued by this Court.  As a result, on January 14, 1999, this Court entered a partial default

13  judgment against Global Arts and Jordan.   That partial default judgment required Global Arts

14  and Jordan to immediately cease their illegal activities, turn over infringing materials and  notify

15  their "licensees" (many of whom are still unknown to Plaintiffs) of the Court's judgment.

16  Consistent with their pattern and practice of illegal conduct, Global Arts and Jordan have ignored

17  the partial default judgment in its entirety.

18

19         Plaintiffs intend to seek a substantial damages award against Global Arts and Jordan as a

20  result of their piracy of hundreds of master recordings resulting in the sale of millions of records

21  infringing Plaintiffs' rights.   In advance of filing a Motion for Final Default Judgment on their

22  remaining claims, Plaintiffs apply now ex parte for an order immediately freezing Global Arts'

23  and Jordan's assets pending final resolution of this action.  Plaintiffs recently levied on a Global

24  Arts account in the Bank of America, Tarzana, California branch (Account No. 04293-15681)

25  containing the illicit proceeds of defendants' infringing activities to satisfy one of the previous

26  sanctions awards entered by this Court.   Plaintiffs seek this relief ex parte because notice to

27  defendants will provide them the opportunity to remove their assets and make any order issued

28  by this Court futile.

Mitchell Silberberg &

                                            - 2 -

1    There are numerous facts which militate in favor of freezing Global Arts' and

2  Jordan's assets at this juncture:

3    • Global Arts and Jordan have repeatedly refused to comply with any and all
   Orders entered by this Court;

4
5    • Global Arts and Jordan have repeatedly refused to provide any discovery
   to Plaintiffs;

6    • It is extremely unlikely that the Plaintiffs will obtain any post-judgment
   discovery concerning the existence and location of their assets;

7
8    • Jordan is engaged in an apparent attempt to avoid being found;

9    • Global Arts' and Jordan's wholly unlawful business has continued despite
   the filing of this action and the numerous orders entered by the Court;

10    • Global Arts and/or Jordan hold at least one existing bank account in
    Europe;

11
12    • The Bank of American Global Arts account upon which Plaintiffs have
    levied contained money obtained directly from the unlawful activity that is the subject of
    Plaintiffs' Complaint; and

13
14    • Global Arts and Jordan continue to be engaged in business with numerous
    contacts in Europe and other foreign countries.

15

16    As set forth more fully below, Plaintiffs seek to immediately freeze defendants'

17  assets, including but not limited to their bank account in the Bank of America, Tarzana, California

18  branch, Account No. 04293-15681. This order is necessary to aid in the enforceability of a

19  damages award and to prevent Global Arts and Jordan from transferring, secreting, or

20  expropriating their assets.

21

22  **II.    THE COURT SHOULD GRANT THE ORDER REQUESTED**

23

24    This Court is well-aware of the unlawful nature of Jordan's and Global Arts'

25  business and with their complete refusal to comply with Court orders. It now appears that

26  Jordan is attempting to avoid being found, and cannot even be located by those persons who

27  have known him well and have conducted business with him over the years. See Declaration of

28  Matthew J. Oppenheim, Esquire, filed simultaneously with this Application. These facts,

Mitchell Silberberg &

- 3 -

1   together with the international nature of Jordan's and Global Arts' piracy business and the fact

2   that there apparently is at least one bank account that Jordan and Global Arts maintain outside

3   the United States, make it likely that Jordan and Global Arts will attempt to avoid the

4   enforcement of any monetary judgment entered by the Court by transferring or secreting their

5   assets.  That may be especially true now since plaintiffs have located a bank account in California

6   that contains assets and have successfully levied on that account.  The order sought by plaintiffs

7   here is well within the power of this Court and, under the circumstances, is appropriate.

8

9           The Court has the power to issue an order freezing the defendants' assets to

10   secure plaintiffs' right to recover damages where, as here, the plaintiff seeks equitable relief.

11   FSLIC v. Dixon, 835 F.2d 554, 560 (5th Cir. 1987) (the Court has authority to order "a preliminary

12   injunction to secure an equitable remedy such as restitution.").  See also USACO Coal Co. v.

13   Carbonmin Energy, Inc., 689 F.2d 94, 97 (6th Cir. 1982) (issuing preliminary injunction freezing

14   assets in case involving requests for constructive trusts, accounting and restitution; "A

15   preliminary injunction is always appropriate to grant intermediate relief of the same character as

16   that which might be granted finally.").

17

18           In this action, plaintiffs seek various types of equitable relief, including the

19   imposition of a constructive trust, and an accounting.  The situation here is, therefore, materially

20   different from Rosen v. Cascade International, Inc., 21 F.3d 1520, 1526-1530 (11th Cir. 1994) in

21   which the Eleventh Circuit held that it was beyond the Court's authority to freeze the

22   defendants' assets in advance of a determination of liability where plaintiff was seeking solely

23   monetary damages.  Id. at 1529.   The Eleventh Circuit specifically recognized Supreme Court

24   precedent that would permit such relief where the injunction requested related to a "fund or

25   property which would have been the subject of the provisions of [a] final decree in the case." Id.

26   at 1527, *citing* De Beers Consol. Mines, Ltd. v. United States, 325 U.S. 212, 65 S. Ct. 1130, 89 L.

27   Ed. 1566 (1945), *relying on* Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S. Ct. 229,

28   85 L. Ed. 189 (1940).  See also Productos Carnic, S.A. v. Central American Beef and Seafood

1  Trading Co., 621 F.2d 683, 686 (5th Cir. 1980) (affirming, with modification, temporary injunction

2  restraining movement of beef pending judgment in suit by Nicaraguan company seeking to

3  recover the beef or its value from Florida corporation to which it had been shipped).[1]

4

5        An order freezing the defendants' assets is particularly appropriate where the

6  Court already has entered a partial default judgment against the defendants and all that remains is

7  a determination of the amount of damages against the defaulting defendants.  In re Uranium

8  Antitrust Litigation, 617 F.2d 1248 (7th Cir. 1980).  In In re Uranium, the Court upheld an

9  injunction prohibiting the defaulted defendants from removing their assets from the United

10 States.   The Court  noted:

11            Such equitable relief is particularly appropriate when a default has

12            been entered. . . .   Since a preliminary injunction seeks to preserve

13            the status quo ante litem . . ., it is also an appropriate means of

14            maintaining the status quo as of the time the default judgment was

15            entered.

16 Id. (citations omitted).

17

18        In addition and in the alternative, the Eleventh Circuit has suggested in the Rosen

19 case that the relief requested by Plaintiffs should be determined by state law.  See 21 F.3d at

20 1529-30.  If that were the case, it is beyond question that Florida courts would permit the entry of

21 an order freezing the defendants' assets under allegations of a constructive trust.  See, e.g.,

22

23 _____

      [1]

24        In addition to the fact that Plaintiffs here seek equitable relief related specifically to the
   injunction requested, the situation here is materially different from Rosen v. Cascade
25 International, Inc., 21 F.3d 1520 (11th Cir 1994) in several other important respects: (1) there is a
   history of defendants' defiance of court orders; (2) there is a real threat that defendants will
26 remain hidden and will secrete assets; (3) defendants have already been found liable, by default
   (unlike Rosen where liability was still subject to litigation); and, given that, (4) the Court must in
27 this case assess monetary damages once liability is determined pursuant to the terms of the
   Copyright Act, i.e., monetary damages are not discretionary under the Act.
28

1  Castillo v. Vlaminck de Castillo, 701 So.2d 1198 (Fla. 3d DCA 1997) and the numerous cases

2  cited therein.

3  **III.    CONCLUSION**

4

5  Plaintiffs urgently need the relief sought by this motion.  Unless the relief is

6  granted, any judgment ultimately awarded may never be satisfied.  For all of the foregoing

7  reasons, plaintiffs respectfully request that the Court issue the requested injunction.

8

9  DATED: March 11, 1999                    RUSSELL J. FRACKMAN
                                           YAKUB HAZZARD
10                                         MITCHELL SILBERBERG & KNUPP LLP

11                                                    and

12                                         KAREN L. STETSON

13

14                                         By: _____
                                                Russell J. Frackman
15                                              Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MATTHEW J. OPPENHEIM

I, MATTHEW J. OPPENHEIM, declare:

1.      I am associate counsel, civil litigation, for the Recording Industry Association of America, Inc. (the "RIAA"). I am a member of the bars of Maryland and the District of Columbia. I have personal knowledge of the following facts, and if called and sworn as a witness, I could competently testify thereto.

2.      The RIAA is a not-for-profit trade association formed in 1952. The RIAA's members are record companies that, among other things, are the copyright proprietors of or owners of exclusive rights under copyright and common law in and to sound recordings of musical works that have been embodied in digital musical recordings or analog musical recordings lawfully made and distributed in the United States. The RIAA's member companies together create, manufacture or distribute over ninety percent of all legitimate sound recordings sold in the United States. Among other things, the RIAA represents the collective interest of its membership before legislative, regulatory, and judicial bodies with respect to federal, state, and local proceedings affecting the entire record industry. One of the responsibilities of the RIAA is the commencement of civil proceedings on behalf of its member companies against those who unlawfully exploit and usurp the member companies' rights under copyright or common law.

3.      I was and am the attorney primarily responsible for overseeing the investigation of defendants Danny Jordan, Global Arts Productions, Jack Millman, Stack-O-Hits

and Saturn Records. In this capacity, I have also taken the role of coordinating the international aspects of the investigation. I am also the attorney primarily responsible for controlling the instant litigation. I serve as the plaintiffs' representative in this case.

4.      The plaintiffs in this action are members of the RIAA. I have also been working with over a dozen European counterparts of the RIAA in connection with the instant litigation and related litigation pending in Europe against licensees of Global Arts Productions ("Global Arts") and Danny Jordan ("Jordan") concerning the copying, manufacturing, and distribution of compact discs containing unauthorized copies of various sound recordings owned by the plaintiffs.

5.      As I mentioned in my first declaration filed in this action on July 2, 1998, in connection with the defendants' motion to dismiss, Jordan first contacted me on February 23, 1998. At that time, he provided to me a phone number and address at which he could be reached in Florida.

6.      After Jordan was served in this action, in his motion to dismiss filed June 18, 1998, Jordan claimed to be a resident of California.

7.      It appears that Jordan has moved a number of times, even during the pendency of this action. As noted above, when the action was filed, we served Jordan with process in Florida. While the action was proceeding, we were advised by David Seif, then

Jordan's attorney, that Jordan had moved to Atlanta, Georgia. Mr. Seif also advised us at that

time that Jordan had refused to give him, his own lawyer, a forwarding address in Atlanta.

Thereafter, Mr. Seif informed us periodically that he was having difficulty in communicating with

Jordan.

8.     We have also learned that within the last several months, Jordan may have

moved to Las Vegas.

9.     Within the last several weeks, I met in Europe with Peter Baumgartner, a

principal of one of Global Arts' purported "licensees," a company called Gruezi Schallenplatten

in Switzerland ("Gruezi"). Mr. Baumgartner advised me that Jordan had moved outside the

United States to Toronto, Canada.[1]

10.     About one week ago, Plaintiffs deposed Richard Perlman, who has been

identified as one of Global Arts' lawyers and/or its vice-president of legal affairs (a fact denied by

Mr. Perlman). Mr. Perlman testified that although he had known Jordan for many many years,

had conducted certain business with him, and had spoken with him 50 times in the last year and a

half, he did not know where Jordan was now located, and that it was difficult for him to reach

Jordan (which he had to do through an answering service). As reflected in Exhibit A attached

---

[1]Interestingly, Mr. Baumgartner admitted that when he became concerned about a
judgment entered in Europe against one of Gruezi's distributors, his reaction was to form a sham
corporation in London to hide their activity in much the same fashion as Jordan's apparent
reaction to Plaintiffs' Complaint herein. The formation of Gruezi's sham corporation occurred
with Jordan's knowledge and consent.

hereto, which is a page 104 from Mr. Perlman's deposition, when asked if he had asked Mr.

Jordan what state he was in, Mr. Perlman stated: "I've asked him. He hasn't been very

forthcoming."

11.      Nor did Mr. Leibowitz, the principal of defendant Saturn Records, know

of Jordan's whereabouts, even though he had been a friend of Jordan's for many years and

Jordan is an agent of Saturn Records. Mr. Leibowitz testified, when asked if he knew where Mr.

Jordan lives: "No. He's always -- he travels so much, I never know where he's going to call

from." He, too, must contact Jordan through an answering service. Attached hereto as Exhibit B

are pages 15 and 16 of Leibowitz's deposition.

12.      We also learned during this action that Jordan had changed the fictitious

name under which he was doing business from Global Arts Productions to Just Great Music

because Jordan's name had become "too associated with Global Arts" – not a phenomena that

most legitimate businessmen would fear. See Declaration of Marcio Goncalves filed in

opposition to Defendants' Motions to Dismiss dated July 2, 1998.

13.      At the deposition of defendant Jack Millman, he testified that many years

ago Jordan used another name, Jerry Florio, in a business transaction involving recordings. He

too, did not know where Jordan was when he was last contacted by Jordan about one year ago.

14.      It is extremely important to the plaintiffs that they obtain an order freezing

the bank account that is subject to this request. Indeed, it may be the only possibility that the

plaintiffs have of ever collecting on a judgment in this matter. Not only has Jordan completely failed to comply with any discovery or other Court orders, he has never voluntarily paid any of the monetary sanctions awarded by the Court in this action.

15.    We first found out about the subject account, Account No. 04293-15681 at the Bank of America in Tarzana, California, through documents obtained from Jordan's licensee, Gruezi. Those documents indicate that the proceeds from Jordan's illicit sales of unauthorized recordings that infringe upon the plaintiffs' rights were wire transferred directly into that account. Attached hereto as Exhibit C are copies of some of those documents which we believe to be but a small portion of the money transferred to that account from just one of Jordan's and Global Arts' licensees. Therefore, not only is this account a potential source of money for payment of any judgment, but it appears to be at least one repository of the proceeds derived by Jordan from his illicit business. We recently successfully levied on that account and received $2,601.24.

16.    We also determined from documents obtained from Richard Perlman that Jordan or Global Arts had at least one other account outside of the country, in the Bank of Scotland. Attached hereto as Exhibit D is a copy of a document produced by Mr. Perlman which indicates, as Perlman testified, payment to Jordan of $21,600 to Bank of America and $32,000 to Bank of Scotland as a result of just a small number of Jordan's unlawful transactions.

17.    Jordan obviously has other contacts and does significant business outside of the country. For example, we have learned that he has licensees in Australia, Austria, Belgium, Brazil, Canada, Chile, The Czech Republic, Denmark, Finland, Germany, Holland,

Japan, Poland, Spain, Sweden, and Switzerland, and, therefore, would have available to him,
potentially, the ability to transfer his assets outside of the United States.

18.     As the court knows, we have previously obtained a partial default
judgment against Jordan and anticipate seeking a large money judgment against Jordan. Based
upon Jordan's unauthorized duplication and licensing of hundreds of plaintiffs' valuable master
recordings being distributed throughout the world embodied in untold numbers of records
infringing the rights of the plaintiffs, we believe we are entitled to a multi-million dollar judgment.

I declare under penalty of perjury pursuant to the laws of the United States of
America that the foregoing is true and correct. Executed this 11th day of March 1999, at
Washington, D.C.

MATTHEW J. OPPENHEIM

March 11, 1999

# EXHIBIT A (2 pages)

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA


SONY MUSIC ENTERTAINMENT,          )
INC., et al.,                      )
                                   )
                Plaintiffs,        )    No. 98-6507-CIV
                                   )       MIDDLEBROOKS
        vs.                        )
                                   )       VOLUME I
GLOBAL ARTS PRODUCTIONS,           )
et al.,                            )
                                   )
                Defendants.        )
_____    )


# CERTIFIED COPY


DEPOSITION OF RICHARD HARRY PERLMAN

Thursday, February 4, 1999




The
Egnatuk
Agency

CERTIFIED SHORTHAND REPORTERS

370 South Crenshaw Blvd.
Suite E-102
Torrance, California 90503
(310) 787-3240

REPORTED BY:
Theresa A. Crowley
CSR No. 5513, RPR


File No. 2-4-992

called you in the last year and a half?  You said

"fairly regularly"?

     A      I may have spoken to him 50 times.

     Q      Do you know where he lives now?

     A      No.

     Q      Do you know what state?

     A      No.

     Q      Have you ever asked him?

     A      I've asked him.  He hasn't been very

forthcoming.

     Q      Have you had any written communication

with Mr. Jordan in the last year and a half?

     A      No.

     Q      Have you ever had any written

communications with him?

     A      Period?

     Q      Yes.

     A      I'm sure in connection with those

business venture things I did.

     Q      Other than that?

     A      No.

     Q      What was the nature of the discussion

that you had?  What were the topics of the

discussions you had during these 50 conversations

within the last year and a half?

104

**EXHIBIT B (3 pages)**

1           UNITED STATES DISTRICT COURT

2           SOUTHERN DISTRICT OF FLORIDA

3

4

5   SONY MUSIC ENTERTAINMENT,  )        **CERTIFIED COPY**
     INC., et al.,           )

6                    )

7         Plaintiffs,  )

8        vs.           )   No. 98-6507-CIV
                    )   MIDDLEBROOKS

9   GLOBAL ARTS PRODUCTIONS,  )
     et al.,             )

10         Defendants.   )

11

12

13

14

15

16        DEPOSITION OF SHELLY LIEBOWITZ

17          Tuesday, December 1, 1998

18

19

20

21                   The
                     Egnatuk

22                   Agency

              CERTIFIED SHORTHAND REPORTERS

23   REPORTED BY:          370 South Crenshaw Blvd.
     Ingrid Suarez Egnatuk    Suite E-102

24   CSR No. 3098, RPR      Torrance, California 90503
                       (310) 787-3240

25   File No.:  12-2-981

                                1

1    status of the lawsuit at that time?

2          A      No, he didn't.

3          Q      Did -- during the course of that

4    conversation, did you discuss with Mr. Jordan whether

5    he would pay your legal fees in connection with the

6    action?

7          A      No, I did not.

8          Q      Did he ask you to pay his legal fees?

9          A      No, he did not.

10         Q      Did the subject of legal fees come up

11   at all?

12         A      No.  Not at all.

13         Q      Is there anything else about that

14   conversation at all that you recall, sir?

15         A      No.  Nothing specific.

16         Q      How long did it take?

17         A      Maybe 10, 15 minutes.  I know Dan

18   Jordan a long time.  He's been a friend.  He knows my

19   wife and my child.  He was at my son's bris.  So he

20   asked a lot of questions, how the baby is doing, how

21   my wife is adjusting to California.  The basics.

22         Q      Did you make any notes during the

23   conversation?

24         A      No.  Not at all.

25         Q      Have you spoken to Mr. Jordan since

                                                        15

1   that time?

2           A       No, I haven't.

3           Q       Do you know where he is presently

4   residing?

5           A       No.  He's always -- he travels so much,

6   I never know where he's going to call from.

7           Q       But do you know where he lives?

8           A       I have an answering service that I

9   usually leave a message for him at.

10          Q       Do you happen to remember what that

11  number is?

12          A       No, I don't.  Not offhand.  I don't

13  have those numbers with me.

14          Q       Do you ever mechanically record,

15  tape-record, any telephone conversations?

16          A       Never.

17          Q       And it's your recollection that this

18  conversation with Mr. Jordan was before you were

19  served initially with a Subpena in this case?

20          A       Yes.

21          Q       And sometime thereafter you were served

22  with a Subpena, sir; correct?

23          A       Correct.

24          Q       Now, that Subpena asked you to appear

25  at a deposition on a specified date sometime earlier

                                                        16

# EXHIBIT C (17 pages)

 **UBS**

GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

4112

8040 ZH-ALBISRIEDERPL..     14.09.98
TEL. (01) 497 81 11
REF. 3410 254 TO 6132565   HMZ
BUCHUNGSDATUM              14.09.98

BELASTUNGSANZEIGE                    KONTO NR.  ███████████

AUFTRAG   11.09.98              VERGUETET DURCH
BEGUENSTIGTE(R)                BANK OF AMERICA
04293-19681                    TARZANA BRANCH NO0429
GLOBAL ARTS PRODUCTION         18337 VENTURA BLVD.
7160 NORS HILL ROAD            TARZANA, CA 91356
TAMARAC, FLA33321
ZAHLUNGSGRUND                  **GEBUCHT**
FAX 11.09.98      1-JC : 8000.-
                       -1000.-
                  b:JO : - 860.-   Anwalt USA
                  b:JO : - 300.-   Kosten ████

                  VAL. 14.09.98  US$        ██6.5-00

MITTEILUNG OHNE UNTERSCHRIFT
  41111        ▶                      UBS SA  UBS AG

# UBS

Union de Banques Suisses
Schweizerische Bankgesellschaft
Unione di Banche Svizzere
Swiss Bank of Switzerland

GRUEZI SCHALLPLATTEN AG
OBTSTRASSE 2
8854 SIEBNEN

2277
2278
2279

8040 ZH-ALBISRIEDERPL. 10.06.98
TEL. (01) 497 81 11
REF. 9967 161 TJ 9678000
BUCHUNGSDATUM 11.06.98

| BELASTUNGSANZEIGE | KONTO NR. ▓▓▓▓▓▓▓ |

AUFTRAG 10.06. ANZAHL POSITIONEN 2 SEITE 1

GLOBAL ARTS PRODUCTION TAMARAC, FLA 33321 US$ ▓▓▓ 4,480.00

 GEBUCHT

VAL. 11.06.98 US$ ▓▓▓▓▓▓

MITTEILUNG OHNE UNTERSCHRIFT
40023

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

# UBS

GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

9276

ZH-ALBISRIEDERPL.        08.06.98
(01) 497 81 11
6112 156 TO 5023089    AYH
BUCHUNGSDATUM            08.06.98

BELASTUNGSANZEIGE                    KONTO NR.

AUFTRAG    05.06.98
BEGUENSTIGTE(R)
04293-15661
GLOBAL ARTS PRODUCTION
7160 NORS HILL ROAD
TAMARAC, FLA33321



VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH NO0429
18337 VENTURA BLVD.
TARZANA, CA 91356

## GEBUCHT

VAL. 08.06.98   US$          **720.00

MITTEILUNG OHNE UNTERSCHRIFT
44366

Union de Banques Suisses / Schweizerische Bankgesellschaft
Uniono di Banche Svizzere / Union Bank of Switzerland



Case 1:99-cv-06690-VM Document 79   Entered on FLSD Docket 03/16/1999   Page 24 of 39

## UBS

GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

6040 ZH-ALBISRIEDERPL.          07.04.98
TEL. (01) 497 81 11
REF. BFQS 097 TO 1150572   RFG/LCM
BUCHUNGSDATUM                   07.04.98

KONTO NR.

BELASTUNGSANZEIGE

AUFTRAG    07.04.98              VERGUETET DURCH
BEGUENSTIGTE(R)                 BANK OF AMERICA
04295-15681                     TARZANA BRANCH N00429
GLOBAL ARTS PRODUCTION          18337 VENTURA BLVD.
7160 NOBS HILL ROAD             TARZANA, CA 91356
TAMARAC, FLA33321
ZAHLUNGSGRUND



VAL. 07.04.98  US$        ***6,000.00

MITTEILUNG OHNE UNTERSCHRIFT
44991                           Union de Banques Suisses / Schweizerische Bankgesellschaft
                                Unione di Banche Svizzere / Union Bank of Switzerland

03/10/99  21:59  PTH-WALK UP → 3056040598                    NO.366    P15
03/10/99  21:12 FAX 202 223 9022     R.I.A.A.                         ✗000

# UBS

GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

8040 ZH-ALBISRIEDERPL.     17.03.98
TEL. (01) 497 81 11
REF. 5007 075 TO 0590960   MMZ
BUCHUNGSDATUM              17.03.98

| BELASTUNGSANZEIGE | | KONTO NR. |

AUFTRAG    16.03.98
BEGUENSTIGTE(R)
04293-15681
GLOBAL ARTS PRODUCTION
7160 NORS HILL ROAD
TAMARAC, FLA33321

VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH NO0429
18337 VENTURA BLVD.
TARZANA, CA 91356





VAL. 17.03.98  US$        ##4,000.00

MITTEILUNG OHNE UNTERSCHRIFT
19985           IB

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

**UBS**

GRUEZI SCHALLPLATTEN AG                    575
OSTSTRASSE 2
8854 SIEBNEN

8050 ZH-ALBISRIEDERPL.        13.02.98
TEL. (01) 497 81 11
REF. XN02 044 TK 9435680   RFG/GSO
BUCHUNGSDATUM                 13.02.98

| BELASTUNGSANZEIGE | KONTO NR. : |

AUFTRAG    13.02.98              VERGUETET DURCH
BEGUENSTIGTE(R)                 BANK OF AMERICA
04295-15681                     TARZANA BRANCH NO0429
GLOBAL ARTS PRODUCTION          18337 VENTURA BLVD.
7160 NORS HILL ROAD             TARZANA, CA 915..
TAMARAC, FLA33321                                    GEBUCHT
ZAHLUNGSGRUND
                                                       1700/
                    Kauf Produktion

                                VAL. 13.02.98  US$     **11,250.00

MITTEILUNG OHNE UNTERSCHRIFT     Union de Banques Suisses / Schweizerische Bankgesellschaft
90700                            Unione di Banche Svizzere / Union Bank of Switzerland

03/10/99  22:15 FAX 202 293 8334    R.I.A.A.                    ☑006

# UBS

Union de Banques Suisses
Schweizerische Bankgesellschaft
Unione di Banche Svizzere
Union Bank of Switzerland

**572**

GRUEZZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

8040 ZH-ALBISRIEDERPL.      30.01.98
TEL. (01) 497 61 11
REF. X002 027 TO 8867213    HJF
BUCHUNGSDATUM               02.02.98

| BELASTUNGSANZEIGE | KONTO NR. | ▇▇▇▇▇▇▇ |

AUFTRAG    27.01.98
BEGUENSTIGTE(R)
04293-18681
GLOBAL ARTS PRODUCTION
7160 NORS HILL ROAD
TAMARAC, FLA33321        *Kauf Produktion*

VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH N00429
18337 VENTURA BLVD.
TARZANA, CA 91356



GEBUCHT

VAL. 02.02.98  US$       **2,400.00

MITTEILUNG OHNE UNTERSCHRIFT
47810

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

**UBS**   Union de Banques Suisses
Schweizerische Bankgesellschaft
Unione di Banche Svizzere
Union Bank of Switzerland

                                    52

                        GRUEEZI SCHALLPLATTEN AG
                        OSTSTRASSE 2
                        8854 SIEBNEN

8040 ZH-ALBISRIEDERPL.    12.01.98
TEL. (01) 497 51 11
REF. X002 009 TO 6402150    HJF/LCM
BUCHUNGSDATUM              12.01.98

BELASTUNGSANZEIGE                    KONTO NR.

AUFTRAG    09.01.98                  VERGUETET DURCH
BEGUENSTIGTE(R)                      BANK OF AMERICA
04293-15681                          TARZANA BRANCH NO0429
GLOBAL ARTS PRODUCTION               18337 VENTURA BLVD.
7160 NORS HILL ROAD                  TARZANA, CA 91356
TAMARAC, FLA33321
ZAHLUNGSGRUND                        **GEBUCHT**

                        VAL. 12.01.98   US$        **10,000.00

MITTEILUNG OHNE UNTERSCHRIFT         Union de Banques Suisses / Schweizerische Bankgesellschaft
  45028              IB               Unione di Banche Svizzera / Union Bank of Switzerland

                    *Zahlung 1998*



**UBS**

8040 ZH-ALBISRIEDERPL.        19.12.97
TEL. (01) 497 81 11
REF. XL02 351 TO 7666945    001
BUCHUNGSDATUM                 22.12.97

| BELASTUNGSANZEIGE |

GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

KONTO NR.

AUFTRAG
BEGUENSTIGTE(R)
04293-13681
GLOBAL ARTS PRODUCTION
7160 NORS HILL ROAD
TAMARAC, FLA33321

VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH N00429
18337 VENTURA BLVD.
TARZANA, CA 91356

GEBUCHT

US$            1,600.00

VAL. 22.12.97

MITTEILUNG OHNE UNTERSCHRIFT
52949

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

Case 99-06350-PDM23786 Document   Entered on FLSD Docket 03/16/1999   Page 30 of 39
03/10/99   01:14 FAX 202 223 8322          R.I.A.A.                      0011



**UBS**

Union de Banques Suisses
Schweizerische Bankgesellschaft
Unione di Banche Svizzere
Union Bank of Switzerland

GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

8040 ZH-ALBISRIEDERPL.    02.12.97
TEL. (01) 497 81 11
REF. XH08 335 TO 7215946   HJF/NA3
BUCHUNGSDATUM            02.12.97

| BELASTUNGSANZEIGE |

KONTO NR. ▄▄▄▄▄▄▄▄▄

AUFTRAG
BEGUENSTIGTE(R)
04293-15681
GLOBAL ARTS PRODUCTION
7160 NORS HILL ROAD
TAMARAC, FLA33321

VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH N00429
18337 VENTURA BLVD.
TARZANA, CA 91356



**GEBUCHT**

VAL. 02.12.97  US$        **11,250.00

MITTEILUNG OHNE UNTERSCHRIFT
50691

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

**UBS**  Union de Banques Suisses
Schweizerische Bankgesellschaft
Unione di Banche Svizzere
Union Bank of Switzerland

GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

7619

8040 ZH-ALBISRIEDERPL.      17.10.97
TEL. (01) 497 81 11
REF. 6009 289 TO 5680013    HWO/FHS
BUCHUNGSDATUM               17.10.97

| BELASTUNGSANZEIGE | KONTO NR. |
| --- | --- |

AUFTRAG                          VERGUETET DURCH
BEGUENSTIGTE(R)                  BANK OF AMERICA
04293-15681                      TARZANA BRANCH N00429
GLOBAL ARTS PRODUCTION           18337 VENTURA BLVD.
7160 NORS HILL ROAD              TARZANA, CA 91356
TAMARAC, FLA33321

**GEBUCHT**

VAL. 17.10.97  US$       US$12,000.00

MITTEILUNG OHNE UNTERSCHRIFT      Union de Banques Suisses / Schweizerische Bankgesellschaft
45714                            Unione di Banche Svizzere / Union Bank of Switzerland

Case 0:96-cv-06517-WMS Tht Document 74 Entered on FLSD Docket 03/16/1999   Page 32 of 39



**UBS**   Union de Banques Suisses
          Schweizerische Bankgesellschaft
          Unione di Banche Svizzere
          Union Bank of Switzerland

                                              3088

                              GRUEEZI SCHALLPLATTEN AG
                              OSTSTRASSE 2
                              8854 SIEBNEN

8040 ZH-ALBISRIEDERPL.   10.09.97
TEL. (01) 497 81 11
REF. 6009 282 TO 4954303   HHO
BUCHUNGSDATUM            10.09.97

BELASTUNGSANZEIGE                       KONTO NR.   ▬▬▬▬▬

AUFTRAG                       VERGUETET DURCH
BEGUENSTIGTE(R)               BANK OF AMERICA
04293-15681                   TARZANA BRANCH NO0429
GLOBAL ARTS PRODUCTION        18337 VENTURA BLVD.
7160 NORS HILL ROAD           TARZANA, CA 91356
TAMARAC, FLA33321

                                      GEBUCHT

                              VAL. 10.09.97   US$      WW2,400.00

MITTEILUNG OHNE UNTERSCHRIFT    Union de Banques Suisses / Schweizerische Bankgesellschaft
40316                           Unione di Banche Svizzere / Union Bank of Switzerland

# UBS

Union de Banques Suisses
Schweizerische Bankgesellschaft
Unione di Banche Svizzere
Union Bank of Switzerland

8040 ZH-ALBISRIEDERPL.      29.08.97
TEL. (01) 497 81 11
REF. 9409 290 TO 4656567   DDI
BUCHUNGSDATUM              29.08.97

| BELASTUNGSANZEIGE |
|---|

GRUEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

2724

| KONTO NR. |
|---|

AUFTRAG          LIZENZEN
BEGUENSTIGTE(R)
04295-15681
GLOBAL ARTS PRODUCTION
7150 NORS HILL ROAD
TAMARAC, FLA 33321
ZAHLUNGSGRUND

VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH N00425
18537 VENTURA BLVD.
TARZANA, CA 91356

 GEBUCHT

VAL. 29.08.97   US$      **2,560.00

MITTEILUNG OHNE UNTERSCHRIFT
69068

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

Case 0:00-cr-06067-DMM   Document 74   Entered on FLSD Docket 03/16/1999   Page 34 of 39

**UBS**

Union de Banques Suisses
Schweizerische Bankgesellschaft
Unione di Banche Svizzere
Union Bank of Switzerland

GRUEZZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

2332

8040 ZH-ALBISRIEDERPL.        14.07.97
TEL. (01) 497 81 11
REF. 3409 192 TO 3539206        001/FIG
BUCHUNGSDATUM                   14.07.97

| BELASTUNGSANZEIGE | | KONTO NR. |
| --- | --- | --- |

AUFTRAG
BEGUENSTIGTE(R)
04291-05800
DANNY JORDAN
7160 NORS HILL ROAD
TAMARAC, FLA 33521

VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH NO.0429
18337 VENTURA BLVD.
TARZANA, CALIFORNIA

**GEBUCHT**

VAL. 14.07.97  US$        $$12,250.00

MITTEILUNG OHNE UNTERSCHRIFT
44265                    10

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

Case 0:98-cv-06574-DMM Document 741 Entered on FLSD Docket 03/16/1999  Page 35 of 39



GRUEEZI SCHALLPLATTEN AG
OSTSTRASSE 2
8854 SIEBNEN

2099

8040 ZH-ALBISRIEDERPL.        25.06.97
TEL. (01) 497 81 11
REF. 6409 175 TO 3076328     DDI
BUCHUNGSDATUM                25.06.97

| BELASTUNGSANZEIGE |

| KONTO NR. |

AUFTRAG
BEGUENSTIGTE(R)
04291-03800
GLOBAL ARTS PRODUCTION
7160 NORS HILL ROAD
TAMARAC, FLA 33321



VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH NO.0429
18337 VENTURA BLVD.
TARZANA, CA. 91356

GEBUCHT

VAL. 25.06.97  US$         ***5,200.00

MITTEILUNG OHNE UNTERSCHRIFT
55955

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland



8040 ZH-ALBISRIEDERPL.      21.02.97
TEL. (01) 497 81 11
REF. 6008 051 TO 0309756    REV/FIE
BUCHUNGSDATUM               24.02.97

BELASTUNGSANZEIGE

GRUEEZI SCHALLPLATTEN AG      **807**
OSTSTRASSE 2
8854 SIEBNEN

KONTO NR.

---

AUFTRAG              FILETRANSFER
BEGUENSTIGTE(R)
0429313681
GLOBAL ARTS PRODUCTION
7160 NOBS HILL ROAD
TAMARAC, FLA 33321

VERGUETET DURCH
BANK OF AMERICA
TARZANA BRANCH NO.0429
18337 VENTURA BLVD.
TARZANA, CA 91356

**GEBUCHT**

US$                7,200.00

VAL. 26.02.97

FORMULAR OHNE UNTERSCHRIFT
46315

Union de Banques Suisses / Schweizerische Bankgesellschaft
Unione di Banche Svizzere / Union Bank of Switzerland

Case 0:98-cv-06507-DMM   Document 75   Entered on FLSD Docket 03/16/1999   Page 37 of 39



GRUEEZI SCHALLPLATTEN AG          *1487*
OSTSTRASSE 2
8854 SIEBNEN

6040 ZH-ALBISRIEDERPL.   08.04.97
TEL. (01) 497 81 11
REF. 5409 09B TO 1377422   DOI/FIE
BUCHUNGSDATUM            08.04.97

**BELASTUNGSANZEIGE**            KONTO NR.

AUFTRAG                    VERGUETET DURCH
BEGUENSTIGTE(R)            BANK OF AMERICA
04293-15601               TARZANA BRANCH NO.0429
GLOBAL ARTS PRODUCTION     18337 VENTURA BLVD.
7160 NORS HILL ROAD       TARZANA, CA 91356
TAMARAC, FLA 33321

                          **GEBUCHT**

                          VAL. 08.04.97   US$      **21,600.00

FORMULAR OHNE UNTERSCHRIFT    Union de Banques Suisses / Schweizerische Bankgesellschaft
  47594                       Unione di Banche Svizzere / Union Bank of Switzerland

# EXHIBIT D (1 page)

*strictly confidential* Mr R
Preman

| | | **Fax Message** |
|---|---|---|
| Ballo H.W. | Telefon/Fax | |
| Goethestr.73 | 06109/65830 | 001-818-763-7270 |
| 63477 Maintal | | |

| (Datum) DATE. 8-17-98 | (Zeit) TIME: | Fax-NO.: 001-954-720-4660 | |
|---|---|---|---|
| An TO: Danny | | An TO: | |
| Name | | Company(Firma) | |
| Von FROM: Hans | | Reply Required (Antwort) [X]YES [ ]NO | Seite/n Page/s |
| Betreff SUBJEKT/REF.: Encl. | | | |

Dear Danny,

1. Encl. please find the order of STAR for the payment of $ 12.000,- to my account, dated and confirmed by the bank on 08-13-98.

2. My Invoice to Koch of 8-13-98. ⟶ $ 40.000,-

3. Did you check the payment of :
   a) SNAKE'S ⟶ $ 10.000, — 8000 to B of A
   b) PATRICIA ⟶ $ 12.000, — 9000 to B of A
   c) Mr. Boog, JM Sentel ⟶ $ 41.270, — 32000 to B of Scot
   $ 5.200, — 4000 to B of A
according to the invoices which I forwarded earlier this month.

I'm in need of the information when the signed agreements of SUN LIGHT will be returned as I received today a reminder call from Falcon, as they are not able to pay.

Furtheron for the next 4 cd's the phone and fax no. of Mr. Croshaw, that he is able to sign the agreements by fax together with the complete information of the bank account.

And last not least the phone and fax no. of Mr. Simmons in the UK regarding Bob Marley, as discussed on Saturday.

Kind regards

Hans

Encl 2 pages